**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF ALABAMA**

**SOUTHERN DIVISION**

FILED - USDC ALSD
MAY 19 '26 PM2:06

| | | |
|---|---|---|
| SCOTT MILLER,<br>Plaintiff,<br><br>v.<br><br>CITY OF FAIRHOPE, ALABAMA;<br>MARCUS McDOWELL, City Attorney, in his individual capacity;<br>HUNTER SIMMONS, Planning Director, in his individual capacity;<br>JOHN/JANE DOE 1, in his/her individual capacity,<br>Defendants. | ) | Civil Action No. 1:25-cv-00508-JB-B<br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT**

**INTRODUCTION**

This is a civil-rights action under 42 U.S.C. § 1983. Plaintiff Scott Miller alleges that the City of Fairhope and its named officials, acting under color of state law, retaliated against him for exercising his First Amendment right to petition the government for redress of grievances; intentionally and irrationally treated him differently from similarly situated citizens in violation of the Equal Protection Clause; interfered with his Baldwin County 911 emergency-services address through off-channel intergovernmental action without notice or any opportunity to be heard, in violation of the Due Process Clause; and maintained municipal policies, customs, and practices that were the moving force behind those constitutional violations within the meaning of Monell v. Department of Social Services, 436 U.S. 658 (1978).

Plaintiff repeatedly used ordinary citizen channels — service requests, public records requests, communications with elected officials — to ask the City to follow its own mandatory right-of-way ordinance regarding an unpermitted fence located in the Darrah Street public right-of-way. The

fence itself is not the constitutional injury alleged in this action. The constitutional injuries are the City's responses to Plaintiff's petitioning activity: closing service requests with the written reason that Plaintiff had sued the City; routing and denying public records requests on the stated ground that they touch matters in civil litigation; and initiating an off-channel challenge to Plaintiff's emergency-services address through an intergovernmental meeting.

Plaintiff seeks declaratory and injunctive relief, compensatory damages from the individual Defendants, and costs.

## JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

2. Venue is proper in the Southern District of Alabama under 28 U.S.C. § 1391(b). Defendants reside in this District and the events giving rise to the claims occurred in Fairhope, Baldwin County, Alabama.

## PARTIES

3. Plaintiff Scott Miller is a resident of Fairhope, Alabama. He owns property at 269 Falls Creek Street, Fairhope, Alabama, and uses and accesses property at or around 295 Chet Avenue, Fairhope, Alabama.

4. Defendant City of Fairhope, Alabama ("the City") is a municipal corporation organized under the laws of the State of Alabama. It is a "person" subject to suit under 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978).

5. Defendant Marcus McDowell is the City Attorney for the City of Fairhope. He is sued in his individual capacity for actions taken under color of state law. On information and belief, McDowell exercises final policymaking authority for the City over the handling of public records requests directed to the City and over the City's response to citizen communications routed through legal counsel.

6. Defendant Hunter Simmons is the Planning Director for the City of Fairhope. He is sued in his individual capacity for actions taken under color of state law.

7. Defendant John/Jane Doe 1 is the City employee or employees who authored and entered the closure comment for Building Department Ticket ID 22250 stating that the ticket was being closed because "Scott Miller has sued the City of Fairhope." The true identity of Doe 1 is currently unknown to Plaintiff. It is uniquely within the City's exclusive possession and control through portal audit logs, server logs, personnel records, and internal communications. Plaintiff will move to substitute the true name upon identification through discovery.

## PLAINTIFF'S CONCRETE INJURIES

Plaintiff has suffered concrete, particularized, and ongoing injuries caused directly by Defendants' conduct. These injuries are personal to Plaintiff, not generalized grievances.

8. Denial of access to ordinary municipal processes. Plaintiff's formal City service requests, including Mayor's Office portal request ID 20841, were closed without notice, written determination, investigation, hearing, or any administrative process. Plaintiff was denied access to municipal complaint procedures that the City makes available to other citizens through ordinary administrative channels.

9. Denial of access to public records. Plaintiff's public records requests to the City have been systematically routed through litigation counsel rather than the legally designated records custodian, causing delay, obstruction, and denial of records to which Plaintiff is entitled under the Alabama Open Records Act, Ala. Code § 36-12-40. Plaintiff has been required to expend time and resources attempting to obtain records he is legally entitled to receive through ordinary processing.

10. Interference with emergency-services address. Defendant Simmons's off-channel intergovernmental action caused Baldwin County 911 to reopen and investigate an address Plaintiff had used without dispute for thirteen months. Plaintiff was required to expend time and effort responding to the reopened investigation, communicating with BC911 and the City regarding an address that had been settled, and defending the continued validity of his assigned emergency-services address — all without notice or any opportunity to be heard before the off-channel action was initiated.

11. Chilling of protected First Amendment activity. The City's conduct has chilled Plaintiff's exercise of his right to petition the government. The retaliatory pattern extends beyond Plaintiff personally to persons the City perceives as associated with Plaintiff: a service request submitted by Plaintiff's wife concerning the same right-of-way matter was closed

with the written reason "Scott Miller has sued the City of Fairhope," and an independent third-party public records request submitted by David Collins was denied on the stated ground that the records touch matters in Plaintiff's civil litigation. These events would deter a person of ordinary firmness from continuing to petition the City, both directly and through associates, and have placed concrete obstacles in the path of Plaintiff's continued exercise of his First Amendment rights.

12. Out-of-pocket costs and burden. Plaintiff has incurred filing fees, copying costs, time, and effort responding to the closures of his service requests, the obstruction of his public records access, and the reopening of his 911 address file.

13. Each of the foregoing injuries is fairly traceable to documented conduct by Defendants and is redressable by a favorable decision of this Court.

## FACTUAL ALLEGATIONS

### A. The Right-of-Way Ordinance and the Unpermitted Fence

14. The City's Right-of-Way Construction and Administration Ordinance, Fairhope Code Chapter 19, Article VI (the "ROW Ordinance"), requires a right-of-way permit before any person may construct or obstruct a public right-of-way. Fairhope Code § 19-104.

15. The ROW Ordinance provides that "[a]ny unlawful encroachments existing in the public right-of-way shall be subject to removal." Fairhope Code § 19-113(a). The ROW Ordinance further provides that the word "shall," as used in the ordinance, is "always mandatory." Fairhope Code § 19-102. The City filed the ROW Ordinance as Exhibit 5 to its prior Motion to Dismiss (Doc. 4-5).

16. The Summer Lake Homeowners' Association installed a tall privacy fence within the Darrah Street public right-of-way, in front of or near a public fire hydrant, without a City right-of-way permit.

17. City staff acknowledged in writing that the fence is located in the Darrah Street public right-of-way and was installed without a permit. On November 12, 2025, in response to Plaintiff's public records request, City Clerk Lisa A. Hanks transmitted a written acknowledgment from City Building Official Erik Cortinas stating that "[t]here is a fence on City ROW along the east side of the end of Darrah where it says 'Fairhope Corporate Limits,'" and that the City had no records of any permit for the fence. (Exhibit A.)

18. Plaintiff alleges the unpermitted fence and the City's non-enforcement of the ROW Ordinance as the subject matter of his petitioning activity and as context establishing the differential and retaliatory treatment described below. The constitutional injuries alleged in this action are not the City's failure to enforce its ordinance against a third party. They are the City's responses to Plaintiff's protected petitioning activity.

**B. Plaintiff's Petitioning Activity**

19. Beginning in 2024 and continuing through the filing of this action, Plaintiff repeatedly used ordinary citizen channels to petition the City for action concerning the fence in the Darrah Street public right-of-way. Plaintiff's protected petitioning activity included: (a) filing City 311 and service requests; (b) submitting public records requests; (c) contacting the Mayor's office; (d) communicating with elected officials; and (e) filing this civil action.

**C. Closure of Plaintiff's Service Request Without Process**

20. Plaintiff submitted a Mayor's Office service request concerning the fence, assigned portal request ID 20841. The City marked that request "Closed." No written substantive determination was made. No notice was given. No enforcement steps were identified. No administrative process occurred. (Exhibit B.)

**D. Closure of Service Request With Written Retaliatory Reason**

21. Plaintiff's wife submitted an independent City service request concerning the same fence and right-of-way matter, assigned portal request ID 22250. The ticket recorded inquiries about whether the fence was located in a public right-of-way and which City department had reviewed the issue.

22. After Plaintiff's wife pressed for the right-of-way review, a City employee closed Ticket ID 22250 with a written entry that stated: *"I am closing this request as Scott Miller has sued the City of Fairhope and all communications related to this issue should be sent to our Legal Counsel."* (Exhibit C.)

23. The plain text of the closure entry establishes that the operative reason for the City's refusal to process the service request was Plaintiff's protected litigation activity — not any feature of the request, its merits, or any neutral municipal policy.

24. On information and belief, the City does not close service requests submitted by other citizens on the ground that the citizen, or a member of the citizen's household, has filed

litigation against the City. The City processes other citizens' service requests through ordinary administrative channels regardless of the citizen's litigation status.

**E. Routing and Denial of Public Records Requests**

25. Plaintiff submitted public records requests to the City through normal channels. Plaintiff's requests were systematically routed through litigation counsel rather than processed by the City Clerk as the legally designated records custodian under Alabama law. This routing pattern caused delay, obstruction, and denial of records to which Plaintiff is entitled under the Alabama Open Records Act, Ala. Code § 36-12-40.

26. On or about January 13 through 15, 2026, City Attorney Marcus McDowell personally took over an independent third-party public records request that David Collins, a retired civil engineer with no connection to this litigation, submitted to the City through the City's online portal.

27. McDowell authored responsive emails in which he (a) addressed the requester on January 14, 2026 as "Mr. Collins, if that is your name," and on January 15, 2026 addressed the requester as "Mr. Collins, Mr. Miller, or someone acting on behalf of Mr. Miller," even after Collins had explicitly denied being Plaintiff and identified himself by name, military service background, and fifteen-year Alabama residency; (b) accused Collins of being Plaintiff or acting on Plaintiff's behalf; (c) demanded telephone contact as a precondition to processing — a requirement that does not exist under Ala. Code § 36-12-43(b)(3); (d) quoted a fee of $4,000 to $10,000 before reviewing a single document, demanded payment in advance of any work, and refused to provide the itemized fee breakdown required by Ala. Code § 36-12-43(b)(5)(f); and (e) refused to process the request on the stated ground that the requested documents "all deal with matters in civil litigation and will not be processed through a record request," directing Collins to seek the records through civil discovery. (Exhibit D.)

28. Collins is not a party to any litigation involving Plaintiff. Collins provided government-issued identification as requested. Collins followed every procedural requirement. He was denied access to public records because the City Attorney concluded that the request was connected to Plaintiff.

29. McDowell's written response was not isolated. It reflects a City practice of routing public records requests connected to Plaintiff, or perceived to be connected to Plaintiff, through the City Attorney rather than through the City Clerk, and of refusing to process such

requests on the stated ground that the documents relate to civil litigation. Alabama public records law does not categorically exempt records from disclosure merely because they relate to ongoing civil litigation.

30. The City applied the same practice to Plaintiff directly approximately one month before its application to David Collins. On December 3, 2025, the City through Christopher S. Williams of Hand Arendall Harrison Sale LLC denied Plaintiff's direct public records request on the stated ground that “a party is not allowed to circumvent the Rules of Civil Procedure by making a public records request under Alabama law,” directing Plaintiff to address further communications to the City Attorney or to Williams. On December 5, 2025, Williams expressly removed City Clerk Lisa A. Hanks — the legally designated records custodian under Alabama law — from the email chain handling Plaintiff's records request, stating he was doing so “as a courtesy to her” because City Attorney McDowell would thereafter handle the matter. The removal of the records custodian from a records request, combined with the routing of the request to litigation counsel, demonstrates the City's practice of bypassing the statutorily designated records custodian in matters connected to Plaintiff. (Exhibit G.)

31. The City has invoked Ala. Code § 36-12-46 as the categorical ground for refusing to process Plaintiff's public records requests and the public records requests of persons the City perceives as associated with Plaintiff. Section 36-12-46 by its terms addresses the relationship between public records requests and discovery in pending civil actions; it does not authorize a municipality to refuse processing of a public records request based on the requester's protected First Amendment activity. The City applies its construction of § 36-12-46 in a manner that conditions access to public records on the requester's surrender of his protected right to petition the government, including his right to pursue this litigation. Other citizens not in litigation with the City, and not perceived by the City as associated with Plaintiff, receive public records through ordinary channels under Ala. Code § 36-12-40. Persons not party to any litigation with the City, including David Collins and Plaintiff's wife, have been denied access on the City's stated litigation ground based on their perceived association with Plaintiff. Plaintiff has not been afforded discovery in any litigation against the City that would permit him to obtain the records denied to him on litigation grounds. The City's construction of § 36-12-46 as applied to Plaintiff has the effect of denying him access to the very records that document the conduct at issue in this action.

**F. Off-Channel Interference with Plaintiff's 911 Address**

32. Plaintiff received an emergency-services address at 295 Chet Avenue assigned by Baldwin County 911. Plaintiff used that address without dispute for approximately thirteen months for emergency-services and related purposes.

33. On October 15 through 22, 2024, Plaintiff exchanged text messages with the Summer Lake HOA president regarding Plaintiff's property access. As a result of those communications, the HOA served a letter to Plaintiff's office.

34. On December 12, 2024, Baldwin County 9-1-1 GIS/Addressing Manager Scott Warner sent an email to Defendant Hunter Simmons at Simmons's official City email address (hunter.simmons@fairhopeal.gov), copying Chris Ambron at the City of Fairhope, with the subject line "Manley Rd and Chet Ave." Warner wrote: *"During our recent city addressing meeting I recall you mentioning an issue with Chet Ave and it caught my attention to come back and investigate it. . . . [W]e've reopened this to further investigate and correct."* (Exhibit E, BC911-000024.)

35. On January 23, 2025, Warner emailed Simmons stating that Warner was "just checking with you all first before I got back with this owner and change this address that I got the Cities side of the story" regarding the Miller property. (Exhibit E, BC911-000020.)

36. Simmons used his City position and official City email to raise Plaintiff's address at an intergovernmental city addressing meeting, thereby causing BC911 to reopen and investigate Plaintiff's address file. The City provided Plaintiff no prior notice, no opportunity to be heard, and no administrative process before Simmons initiated this off-channel action.

37. The reopening of Plaintiff's address file created a concrete risk of delayed or misdirected emergency response and required Plaintiff to expend time and resources to defend the validity of an address he had relied upon for over a year.

**G. Additional Pattern Evidence**

38. After Plaintiff contacted the Mayor's office directly to request action on the right-of-way matter, Defendant McDowell contacted Plaintiff's attorney in a separate prescriptive-easement case — a case to which the City of Fairhope is not a party — and delivered the message that the Mayor would not respond to Plaintiff. McDowell's communication crossed jurisdictional lines and used a separate, unrelated legal matter to interfere with Plaintiff's access to an elected official.

39. On information and belief, a member of the Fairhope City Council who resides in the Summer Lake HOA communicated with City department heads regarding enforcement decisions affecting the Summer Lake HOA. Plaintiff makes this allegation on information and belief because the relevant internal communications are within the exclusive possession and control of the City.

40. On information and belief, a City employee who has spoken with Plaintiff stated that City enforcement is applied differently depending on who is seeking enforcement.

### H. The State-Court Action Against the City Is Stayed

41. Plaintiff filed a separate state-court action against the City of Fairhope in the Circuit Court of Baldwin County, Alabama, Case No. CV-2025-901858. On December 17, 2025, Circuit Judge Scott P. Taylor entered an order staying that state-court action "pending resolution of [the] federal case." (Exhibit F.) The City was the party that benefited from the stay.

## CLAIMS FOR RELIEF

### COUNT I

### EQUAL PROTECTION — CLASS OF ONE

### 42 U.S.C. § 1983

*(Against the City of Fairhope and McDowell, Simmons, and Doe 1 in their individual capacities)*

42. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

43. The Equal Protection Clause of the Fourteenth Amendment, enforceable under 42 U.S.C. § 1983, prohibits a state actor from intentionally treating one person differently from others similarly situated without any rational basis. Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

44. Plaintiff is similarly situated to other citizens who file 311 and service requests with the City, request the City to enforce its right-of-way ordinance, and submit public records requests through the City's portal.

45. Other similarly situated citizens (a) receive responses to their service requests through ordinary administrative channels; (b) have their public records requests processed through the City Clerk as the designated records custodian; (c) are not subjected to government-

initiated challenges to their 911 emergency-services addresses through off-channel intergovernmental meetings; and (d) do not have their requests closed with the written explanation that they or a family member has sued the City.

46. Plaintiff was intentionally treated differently from other similarly situated citizens, as documented above: his service requests were closed without process; his wife's service request concerning the same matter was closed citing Plaintiff's lawsuit in writing; his access to the Mayor was intercepted by the City Attorney through an unrelated legal proceeding; his public records requests were routed through litigation counsel; an independent third party's request was denied because of his association with Plaintiff's name; and his Baldwin County 911 address was challenged by a City official at an intergovernmental meeting after he engaged in protected petitioning activity.

47. No rational basis exists for the differential treatment. The differential treatment is not supported by any legitimate governmental purpose and is, on information and belief, motivated by retaliation for Plaintiff's protected litigation activity, favoritism toward politically connected residents of the Summer Lake HOA, and an institutional preference for avoiding admission of the City's regulatory failures.

48. As a direct and proximate result, Plaintiff suffered the injuries described above and is entitled to declaratory and injunctive relief, compensatory damages from the individual Defendants, costs, and reasonable attorney's fees under 42 U.S.C. § 1988 to the extent recoverable.

## COUNT II

## FIRST AMENDMENT RETALIATION

## (Right to Petition the Government)

## 42 U.S.C. § 1983

*(Against the City of Fairhope and McDowell, Simmons, and Doe 1 in their individual capacities)*

49. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

50. The First Amendment to the United States Constitution, applied to the States and their subdivisions through the Fourteenth Amendment and enforceable under 42 U.S.C. § 1983, protects Plaintiff's right to petition the government for redress of grievances. That right includes filing administrative complaints and service requests, requesting public records,

communicating with elected officials, and filing and pursuing civil litigation. See Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005).

51. Plaintiff engaged in constitutionally protected activity by submitting City service requests (including portal request IDs 20841 and 22250), submitting public records requests, communicating with the Mayor's office and elected officials, and filing this litigation.

52. Defendants took adverse actions against Plaintiff that would deter a person of ordinary firmness from continuing to engage in protected First Amendment activity, including:

    (a) closing Building Department Ticket ID 22250 with the written explanation that *"Scott Miller has sued the City of Fairhope and all communications related to this issue should be sent to our Legal Counsel"* (Exhibit C);

    (b) closing Mayor's Office portal request ID 20841 without notice, investigation, or substantive explanation (Exhibit B);

    (c) diverting and refusing to process public records requests connected to Plaintiff, including by directing requesters to obtain records only through civil discovery and by treating an independent third party's request as if it had been made by Plaintiff (Exhibit D);

    (d) intercepting Plaintiff's direct outreach to the Mayor by communicating with Plaintiff's attorney in an unrelated state-court case; and

    (e) causing the reopening of Plaintiff's Baldwin County 911 address file through an off-channel intergovernmental communication initiated by Defendant Simmons at a city addressing meeting, without notice to Plaintiff and without any administrative process (Exhibit E).

53. Defendants' adverse actions were motivated in substantial part by Plaintiff's protected petitioning activity. The retaliatory motivation is established by the express written reasons given in the City's own records: the closure entry for Ticket ID 22250 expressly cites Plaintiff's lawsuit as the reason for closure, and McDowell's written response to Collins expressly cites "matters in civil litigation" as the reason for refusal to process the request. The timing and pattern of the conduct in relation to Plaintiff's petitioning further establish the retaliatory motivation.

54. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered the injuries described above, including denial of governmental services, obstruction of

records access, risk to emergency response, out-of-pocket costs, and chilling of his protected First Amendment activity.

55. Plaintiff is entitled to declaratory and injunctive relief, compensatory damages from the individual Defendants, costs, and reasonable attorney's fees under 42 U.S.C. § 1988 to the extent recoverable.

## COUNT III

## MUNICIPAL LIABILITY (MONELL)

### 42 U.S.C. § 1983

*(Against the City of Fairhope)*

56. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

57. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality is liable under 42 U.S.C. § 1983 when the execution of the municipality's policy or custom inflicts a constitutional injury.

58. The City of Fairhope is liable for the constitutional violations alleged in Counts I and II because those violations were caused by one or more of the following:

(a) **Final-policymaker decision.** Defendant McDowell, as City Attorney, on information and belief exercises final policymaking authority for the City over the handling of public records requests directed to the City and over the City's response to citizen communications routed through legal counsel. His written practice of refusing to process public records requests connected to Plaintiff on the stated ground that the requests "deal with matters in civil litigation" (Exhibit D) constitutes an exercise of final policymaking authority attributable to the City.

(b) **Municipal custom or practice.** The City has a custom and practice of closing, diverting, or routing to legal counsel the ordinary service requests and public records requests of citizens who have sued the City, while processing comparable requests from non-litigant citizens through ordinary administrative channels. The custom is evidenced by the written closure entry on Ticket ID 22250 (Exhibit C), by the closure of Plaintiff's request ID 20841 without process (Exhibit B), by the

McDowell/Collins email exchange (Exhibit D), and by the systematic routing of Plaintiff's records requests through litigation counsel rather than the City Clerk.

(c) **Ratification.** On information and belief, City policymakers had actual or constructive notice of the closure language used in Ticket ID 22250 and of McDowell's written practice regarding Plaintiff-connected records requests, and failed to disavow, correct, or remediate that conduct, thereby ratifying it as official City practice.

59. The policies, customs, and practices described above were the moving force behind the constitutional violations alleged in Counts I and II and were maintained with deliberate indifference to Plaintiff's constitutional rights.

60. As a direct and proximate result, Plaintiff has suffered the injuries described above and is entitled to declaratory and injunctive relief, compensatory damages, and costs.

## COUNT IV

## PROCEDURAL DUE PROCESS

## (Interference with 911 Emergency-Services Address)

## 42 U.S.C. § 1983

*(Against Simmons in his individual capacity and the City of Fairhope)*

61. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

62. The Due Process Clause of the Fourteenth Amendment, enforceable under 42 U.S.C. § 1983, prohibits state actors from depriving any person of a protected interest without constitutionally adequate notice and a meaningful opportunity to be heard.

63. Plaintiff possessed a protected interest in the established and relied-upon emergency-services address at 295 Chet Avenue assigned to him by Baldwin County 911 and used without dispute for approximately thirteen months, including for emergency-services purposes.

64. Defendant Simmons, acting under color of state law and using his official City position and City email, raised Plaintiff's address at an intergovernmental city addressing meeting and

thereby caused Baldwin County 911 to reopen and investigate Plaintiff's address file. The reopening is documented in correspondence on official City email (Exhibit E).

65. Simmons's action, attributable to the City, interfered with Plaintiff's reliance interest in his assigned emergency-services address. The City provided Plaintiff no prior notice, no opportunity to be heard, and no administrative process before Simmons initiated the off-channel intergovernmental action that caused the reopening.

66. The process afforded Plaintiff was constitutionally inadequate in light of the importance of the interest at stake (timely and accurate emergency-services response), the risk of erroneous deprivation through off-channel means without notice, and the minimal burden on the City of providing notice and an opportunity to be heard before initiating such action.

67. As a direct and proximate result, Plaintiff suffered concrete injury, including a risk of delayed or misdirected emergency response and the costs and time required to defend the validity of his address. Plaintiff is entitled to declaratory and injunctive relief, compensatory damages from Defendant Simmons, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and grant the following relief:

A. A declaratory judgment that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

B. Preliminary and permanent injunctive relief enjoining the City and its officers, employees, and agents from closing, diverting, or refusing to process Plaintiff's service requests or service requests submitted by Plaintiff's household on the basis that Plaintiff has petitioned the City or filed litigation against it;

C. Preliminary and permanent injunctive relief enjoining the City and its officers, employees, and agents from routing Plaintiff-connected public records requests through litigation counsel rather than the City Clerk, and requiring the City to process such requests through the legally designated records custodian consistent with Alabama law;

D. Preliminary and permanent injunctive relief enjoining Defendants from initiating or causing changes to Plaintiff's Baldwin County 911 emergency-services address through intergovernmental channels without prior written notice to Plaintiff and a meaningful opportunity to be heard;

E. Compensatory damages against the individual Defendants in their individual capacities in an amount to be determined at trial;

F. Costs of this action, including reasonable attorney's fees to the extent permitted by 42 U.S.C. § 1988; and

G. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Scott Miller

Scott Miller, Pro Se

269 Falls Creek Street

Fairhope, AL 36532

(251) 402-6696

smiller@fluidmotionfab.com

Dated: May 19, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2026, I electronically filed the foregoing First Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Christopher Scott Williams, Esq.

Hand Arendall Harrison Sale LLC

P.O. Box 1499

Fairhope, AL 36532

/s/ Scott Miller

Scott Miller, Pro Se