**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| SCOTT MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-00508-JB-B |
| | ) | |
| CITY OF FAIRHOPE, ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL PROFFER IN SUPPORT OF PENDING REQUEST FOR LEAVE TO AMEND**

Plaintiff Scott Miller ("Miller") moves under Fed. R. Civ. P. 15(a)(2) for leave to file this short supplemental proffer in support of the request for leave to amend that he preserved in his oppositions to the pending motions to dismiss. (Doc. 19 § VII; Doc. 29.) Good cause exists for this submission after briefing closed: on October 21, 2026, a non-party produced documents that Miller did not have before that date. The City's motion (Doc. 16) was argued at the August 5, 2026 hearing (Docs. 21, 23), and the motion of Defendants McDowell and Simmons (Doc. 27) was taken under submission on October 9, 2026 (Doc. 28). Miller does not ask the Court to delay its ruling, reopen briefing, or reconsider any argument. He asks only that, if the Court is inclined to dismiss any claim, it consider these documents in deciding whether that dismissal should be without prejudice and with leave to amend.[1]

## I. THE OCTOBER 21, 2026 PRODUCTION

1. On October 21, 2026, non-party Summer Lake Property Owners Association, Inc. (the "HOA") produced documents Bates-numbered Summer Lake POA 001 through 029 in response to a subpoena issued in *Radiola v. Miller*, No. CV-2024-901570 (Cir. Ct. Baldwin Cnty., Ala.), together with a Certificate of Authenticity signed by the HOA's president. (Ex. 1.)

[1] Exhibits 1 through 10, authenticated by the attached Declaration, are submitted solely in support of Miller's request for leave to amend under Rule 15(a)(2), to show that amendment would not be futile. Miller does not offer them for consideration on the pending Rule 12(b)(6) motions, and the Court need not consider them to rule on those motions. *See* Fed. R. Civ. P. 12(d).

2. Miller did not possess these documents before October 21, 2026. He served the subpoena in *Radiola*, where he is a party, on October 6, 2026, and the HOA produced the documents on its return date. The City has not produced these documents, and no discovery has opened in this action. The City is not a party to *Radiola*, and the subpoena reached only the HOA's own files, not records maintained by the City.

3. Exhibits 5 through 10 are public records and documents already in Miller's possession. Miller does not contend that they are newly discovered. He submits them because their significance became apparent only when read together with the HOA's production, which for the first time placed the City Attorney, the Building Official, and a sitting Council member at a January 15, 2025 meeting at which an enforcement plan against Miller's permitted driveway was formulated.

## II. THE DOCUMENTS

4. **January 15, 2025, 8:42 a.m.** (Ex. 2, Summer Lake POA 010). Before a meeting with City officials, HOA board member Thomas Dean emailed the board that he had been "focusing on what I think the city will be interested in," and that "I don't think they care that Miller is trespassing, putting in driveways, cutting down our trees, bulling [sic] neighbors, or intends to have a Chet address." His first proposed talking point was "Un-permitted construction within city limits. (needs to have consequences)."

5. **January 15, 2025, 11:42 a.m.** (Ex. 2, Summer Lake POA 010). Dean's minutes of that meeting state: "Met with Corey, Erik (City Permit Office), and Marcus (City Attorney) and toured the affected locations. First stop was the end of Chet and the new driveway." Under the heading "City Action Plan," the minutes record that the "City is issuing Miller an immediate 'stop order' for the 'swale' construction and a summons to meet with the city judge," and that the "City is having the 'driveway area' on the end of Chet [surveyed]. Once surveyed, they intend to jack-hammer the poured concrete and put a gate across the area. This is part of the summons Miller will get as he did not get a permit." Under the heading "HOA Action Plan," the minutes record that the HOA would

"[p]rovide a formal letter to the city, through our lawyer," which "will be used by the city to execute step 1 above and needs to be done ASAP."

6. **Identity of "Corey."** On information and belief, "Corey" is Corey Martin, who was then a member of the Fairhope City Council. The basis for that belief is: (a) the minutes list "Corey" with the City officials the HOA representatives "[m]et with," not with the HOA members who attended; (b) the minutes identify Erik and Marcus by their City positions but give "Corey" none, indicating that the recipients already knew who he was; (c) Baldwin County public property records reflect that a Corey A. Martin has owned a home in the Summer Lake subdivision since at least 2013; (d) the City's published agenda for its January 13, 2025 Council meeting, two days before the tour, lists Corey Martin as a Council Member (Ex. 5); and (e) the tour covered City right-of-way and City property and produced a "City Action Plan." Miller expects this allegation to have evidentiary support after a reasonable opportunity for discovery, including the deposition of the minutes' author. *See* Fed. R. Civ. P. 11(b)(3).

7. **January 15, 2025 letter** (Ex. 2, Summer Lake POA 009). The same day, the HOA Board signed a memorandum to Building Official Erik Cortinas "officially requesting the City of Fairhope to issue Mr. Miller with the proper legal request that requires him to stop construction and stop repairing his stormwater diversion swale."

8. **January 25–29, 2025** (Ex. 3, Summer Lake POA 013–022). Ten days after the tour, Cortinas emailed a private surveyor: "The City needs a survey of the end of the Right of Way where Chet Ave dead ends . . . . An adjacent property owner opened the ROW and poured the concrete apron without City permission, and we need to verify exactly where the line is and how much of the apron is on the City ROW." He added that "[t]he Summer Lake POA also needs some survey work done on their property," that "I have copied the POA on this email," and that the HOA could arrange that work with the surveyor "since you will already be on site for the City." On January 29, 2025, Defendant McDowell, who had been copied on the chain, wrote to the surveyor and Cortinas, copying Dean and the HOA: "Yall need me there?"

9. **The Chet Avenue permit** (Ex. 4, Summer Lake POA 029; Ex. 6). The production includes City Right-of-Way Permit No. ROW24-000140, issued to Miller for 295 Chet Avenue. The City's permit portal describes the permit as for a "Driveway" and shows the application received November 22, 2024, plans review approved December 3, 2024, and all reviews complete and approved December 4, 2024 (Ex. 6), six weeks before the January 15 action plan stating that Miller "did not get a permit" and the January 25 email stating that the apron was poured "without City permission."

10. **The January 31, 2025 review** (Exs. 6, 7, 9, 10). Miller's screenshot of the City's permit portal taken on January 31, 2025 shows that new review entries had been opened that day on the already-issued permit, including an "Initial Application Review" and a "Plans Review (BD)" with the status "URGENT REVIEW." (Ex. 9.) At 9:41 a.m. on February 3, 2025, Miller's then-counsel emailed Defendant Simmons, Defendant McDowell, the HOA, and the HOA's counsel a notice attaching the permit and asserting Miller's vested rights in the permitted driveway. (Ex. 10.) Miller's screenshot taken at approximately 10:20 a.m. that morning shows that the January 31 "Initial Application Review" entry no longer appeared and that the January 31 "Plans Review (BD)" entry read "Issued - tracking." (Ex. 9.) The portal today shows an entry opened January 31, 2025, labeled "All Reviews Complete," with the status "Issued - tracking," completed October 21, 2025. (Ex. 6.) No comparable entry appears in the City's record for Permit No. ROW24-000122, the Darrah Street driveway permit issued by the same department two months earlier. (Ex. 7.)

11. **The Darrah Street permit** (Ex. 7). The January 15 tour also "drove over the driveway pour on the end of Darrah." (Ex. 2.) The City had issued Right-of-Way Permit No. ROW24-000122 for that driveway, listing Miller as builder and described in the City's portal as "Cut curb and install concrete driveway on Darrah St." The application was received September 23, 2024, the initial application review was approved September 25, 2024, and all reviews were complete and approved October 9, 2024, more than three months before the tour. (Ex. 7.) The "City Action Plan" recorded at that meeting proposes no action concerning the HOA's fence in the Darrah Street right-of-way. *See* Doc. 15 ¶¶ 16–17.

12. **The November 12, 2024 HOA letter in the City's permit file** (Ex. 8). The Documents tab of the City's portal record for Permit No. ROW24-000122 contains a document titled "Summer Lake POA letter- drainage from Miller property," dated December 2, 2024. It is a demand letter from the HOA Board to Miller dated November 12, 2024, courtesy-copied to "Mr. Erik Cortinas, City of Fairhope Building and Permit Office" and to "Hunter Simmons, Planning Director, City of Fairhope." (Ex. 8.) Nine days later, on November 21, 2024, Baldwin County 911 contacted Miller to question his Chet Avenue address (Miller Decl. ¶ 9), and on December 12, 2024, Baldwin County 911 wrote to Defendant Simmons recalling that he had raised "an issue with Chet Ave" at a "recent city addressing meeting." (Doc. 15 ¶ 34.) This letter is not among the documents the HOA produced.

13. **No contact with Miller.** The documents reflect that City officials met with HOA representatives on site, formulated an enforcement plan, recorded that the HOA would supply a letter to be "used by the city," and copied the HOA on the survey correspondence. No City official contacted Miller concerning the contemplated stop order, summons, survey, or removal of the driveway apron, or asked Miller whether he held a permit, and Miller is not aware of any such contact with his counsel. (Miller Decl. ¶ 11.) On January 31, 2025, Miller telephoned several City departments about his permit, was referred to Cortinas, left him a voicemail, and submitted the City's online contact form to his office; he received no response. (*Id.* ¶ 10.) Defendant McDowell received the permit itself from Miller's counsel on February 3, 2025 (Ex. 10), eighteen days before he informed the same counsel that the Mayor would not respond to Miller. (Doc. 15 ¶ 38.)

14. **January 2026** (Ex. 4, Summer Lake POA 027–028). On January 15, 2026, the HOA's president wrote to Cortinas: "We met about a year ago when we walked the Miller's property with Tom Dean," described this lawsuit, and asked to "discuss the City's position." On January 20, 2026, Cortinas replied that "the City's legal counsel is fully aware of the situation" and is "handling all correspondence on the City's behalf," and that he would forward the message so that counsel "can reach out if they feel it is warranted or appropriate."

## III. RELEVANCE TO THE PENDING REQUEST FOR LEAVE TO AMEND

15. These documents bear directly on matters Defendants contend are inadequately pleaded, including the involvement and knowledge of Defendant McDowell; coordination between City officials and the HOA; the allegation, previously pleaded on information and belief, that a City Council member residing in the HOA communicated with department heads about enforcement affecting the HOA (Doc. 15 ¶ 39); and pretext, because the stated enforcement ground (no permit) is contradicted by the City's own permit records.

16. Building Official Cortinas acknowledged in writing, transmitted to Miller on November 12, 2025, that the HOA's fence is located in the City right-of-way and that the City has no record of a permit for it. (Doc. 15 ¶ 17 & Ex. A.) The new documents show that in January 2025 the same City officials planned to jackhammer and gate Miller's concrete apron in the right-of-way on the stated ground that Miller lacked a permit, although the City had issued Miller Permit No. ROW24-000140. Miller offers this contrast as evidence of motive and pretext, consistent with Doc. 15 ¶ 18, and not as a separate constitutional injury.

17. Taken together, the documents show two private complainants treated in opposite ways by the same City department, concerning alleged encroachments in City right-of-way at the edge of the same subdivision, in the same period. When the HOA complained that Miller's driveway apron in the Chet Avenue right-of-way was unpermitted, City officials, including the Building Official, the City Attorney, and, on information and belief, a sitting Council member, met with the HOA on site, recorded a plan to issue a stop order and summons and to jackhammer and gate the apron, arranged a survey, and copied the HOA on the correspondence (¶¶ 5–8), although the City's own records showed the apron was permitted (¶¶ 9–10). When Miller complained that the HOA's fence in the Darrah Street right-of-way was unpermitted, which the Building Official later acknowledged in writing (Doc. 15 ¶ 17 & Ex. A), his service request was closed without a determination, a second request about the same fence was closed on the stated ground that "Scott Miller has sued the City of Fairhope," and his records requests were routed to litigation counsel and refused (Doc. 15 ¶¶ 20–22, 25, 30 & Exs. B, C, G). No City official contacted Miller about the enforcement plan against his

own property (¶ 13). Miller did not have the HOA's documents when he filed the First Amended Complaint. They supply the side of this comparison that was not previously available to him.

18. The January 2025 documents also fall within the categories of non-party David Collins's January 2026 public records request, which sought, among other things, communications with members of the City Council and representatives of the Summer Lake HOA concerning Chet Avenue, the Darrah Street fence, and removal of a driveway. (Doc. 15 ¶¶ 26–28 & Ex. D.) Defendant McDowell, a participant in the January 2025 survey email chain (Ex. 3), refused that request on January 15, 2026, stating that the documents "all deal with matters in civil litigation," although the January 2025 communications predate Miller's suit against the City.

19. The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied for reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). None applies here. The HOA's documents were produced on October 21, 2026; no discovery has taken place, so Defendants suffer no prejudice; and the documents supply the specific facts Defendants contend are missing, showing that amendment would not be futile.

## CONCLUSION

Miller respectfully requests that the Court (1) find good cause and grant leave to file this supplemental proffer and the attached exhibits; and (2) to the extent the Court is inclined to dismiss any claim against any Defendant, dismiss without prejudice and grant Miller leave to file, within 30 days or such other period as the Court deems appropriate, a motion under Civil L.R. 15(b) attaching a proposed second amended complaint.

Respectfully submitted,

/s/ Scott Miller
Scott Miller, Pro Se
269 Falls Creek Street
Fairhope, AL 36532
(251) 402-6696
smiller@fluidmotionfab.com

Dated: October 22, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I filed the foregoing with the Clerk of the Court, and that counsel of record for all Defendants will be served through the Court's CM/ECF system, including:

Emily B. Van Haneghan
Christopher S. Williams
Hand Arendall Harrison Sale LLC
Post Office Box 1499
Fairhope, Alabama 36533
evanhaneghan@handfirm.com / cwilliams@handfirm.com

/s/ Scott Miller
Scott Miller, Pro Se

## DECLARATION OF SCOTT MILLER

I, Scott Miller, declare as follows:

1. I am the Plaintiff in this action. I have personal knowledge of the facts stated in this Declaration.

2. On October 21, 2026, I received by email from Patrick Collins, counsel for non-party Summer Lake Property Owners Association, Inc., the Association's Response to Non-Party Subpoena, its Certificate of Authenticity of Documents, and documents Bates-numbered Summer Lake POA 001 through 029, produced in *Radiola v. Miller*, No. CV-2024-901570. Exhibit 1 is a true and correct copy of the Response and Certificate. Exhibits 2, 3, and 4 are true and correct copies of the pages Bates-numbered Summer Lake POA 009–010, 013–022, and 027–029, respectively.

3. Exhibit 5 is a true and correct copy of the first page of the City of Fairhope City Council Regular Agenda for Monday, January 13, 2025, which I obtained from the City's website on October 22, 2026.

4. Exhibit 6 is a true and correct printout of the Reviews tab of the City of Fairhope's CitizenServe portal record for Permit No. ROW24-000140, which I printed on October 22, 2026.

5. Exhibit 7 is a true and correct printout of the Reviews tab of the City of Fairhope's CitizenServe portal record for Permit No. ROW24-000122, which I printed on October 22, 2026.

6. Exhibit 8 consists of a true and correct printout of the Documents tab of the City of Fairhope's CitizenServe portal record for Permit No. ROW24-000122, and a true and correct copy of the document listed there as "Summer Lake POA letter- drainage from Miller property.pdf," which I downloaded from that record on October 22, 2026.

7. Exhibit 9 consists of two screenshots that I took on my phone of the Reviews tab of the City of Fairhope's CitizenServe portal record for Permit No. ROW24-000140: the first on January 31, 2025, and the second on the morning of February 3, 2025, at approximately 10:20 a.m. The screenshots have not been altered.

8. Exhibit 10 is a true and correct copy of an email dated February 3, 2025, at 9:41 a.m., from my then-counsel Adam Milam to Hunter Simmons, Marcus McDowell, the Summer Lake POA, and Patrick Collins, which is in my possession.

9. On November 21, 2024, I received an email, a voicemail, and a telephone call from Baldwin County 911 Addressing stating that the 295 Chet Avenue address assigned to my property in October 2023 may be incorrect.

10. On January 31, 2025, I telephoned several City of Fairhope departments about my Chet Avenue permit. I was referred to Building Official Erik Cortinas. I left Mr. Cortinas a voicemail and submitted the City's online contact form to his office. I did not receive a response.

11. No City of Fairhope official contacted me about a stop order, a summons, a survey, or removal of my Chet Avenue driveway apron, or asked me whether I held a permit for it, and I am not aware of any such contact with my counsel. I never received a stop order or summons.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 22, 2026.

/s/ Scott Miller
Scott Miller

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Response by the Summer Lake Property Owners Association, Inc. to Non-Party Subpoena, and Certificate of Authenticity of Documents (Oct. 21, 2026) |
| 2 | Summer Lake POA 009–010: HOA Board memorandum to Building Official Cortinas (Jan. 15, 2025); Thomas Dean emails and meeting minutes (Jan. 15, 2025) |
| 3 | Summer Lake POA 013–022: Cortinas / surveyor / McDowell email chain (Jan. 25–29, 2025) |
| 4 | Summer Lake POA 027–029: HOA president / Cortinas emails (Jan. 15–20, 2026); Permit No. ROW24-000140 |
| 5 | City of Fairhope City Council Regular Agenda, January 13, 2025 (first page) |
| 6 | City of Fairhope CitizenServe record, Permit No. ROW24-000140, Reviews tab (printed Oct. 22, 2026) |
| 7 | City of Fairhope CitizenServe record, Permit No. ROW24-000122, Reviews tab (printed Oct. 22, 2026) |
| 8 | City of Fairhope CitizenServe record, Permit No. ROW24-000122, Documents tab, and Summer Lake POA Board letter to Miller dated Nov. 12, 2024 |
| 9 | Miller's screenshots of CitizenServe record, Permit No. ROW24-000140 (Jan. 31, 2025; Feb. 3, 2025) |
| 10 | Email from Adam Milam to Simmons, McDowell, Summer Lake POA, and Patrick Collins, "Notice & Demand re ROW Permit Chet Ave." (Feb. 3, 2025, 9:41 a.m.) |