**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| SCOTT MILLER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF FAIRHOPE, ALABAMA, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-00508-JB-B |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL PROFFER (Doc. 31)**

Plaintiff Scott Miller, pro se, replies briefly to Defendants' Response (Doc. 33). Plaintiff addresses only the points the Response raises for the first time.

## I. DEFENDANTS DO NOT DISPUTE WHAT THE DOCUMENTS SHOW

The Response does not challenge the authenticity of the non-party production or offer any other reading of it. Defendants concede the proffer "may suggest that there are certain factual pleading deficiencies that [Plaintiff] could potentially remedy." (Doc. 33 at 4.) That concession is the question on a request for leave to amend under Fed. R. Civ. P. 15(a)(2).

Plaintiff does not ask the Court to rewrite his complaint or build his arguments. (*See* Doc. 33 at 2–3.) He asks only that any claim the Court finds deficient be dismissed without prejudice, and that he be given a deadline to file his own second amended complaint pleading these facts.

## II. THERE WAS NO UNDUE DELAY

Defendants say Exhibits 5 through 10 were already in Plaintiff's possession. (Doc. 33 at 3.) That is true, and it is the point. Defendants omit the rest of that paragraph, which says Plaintiff does not claim those exhibits are newly discovered and submits them "because their significance became apparent only when read together with the HOA's production." (Doc. 31 ¶ 3, PageID.347.) Those records show what the City did. Standing alone, they did not show why, or who the City was acting with. The non-party production of October 21, 2026 supplied that connection: the January

15, 2025 site meeting among City officials, the City Attorney, and the Association's representatives; the written "City Action Plan" directed at Plaintiff; and the Association's request that its letter be "used by the city to execute" enforcement. (Doc. 31, Ex. 2, Summer Lake POA 010.) Records that give meaning to facts already known are new evidence.

Nor could Plaintiff have obtained that production sooner. No Rule 26(f) conference has occurred, so no discovery is open in this action. Defendants directed Plaintiff, and an unrelated third party, to seek these records through civil discovery rather than records requests. (FAC ¶¶ 27, 30.) Plaintiff did exactly that, through the only proceeding where a subpoena to this non-party was relevant, and filed the results the day after receiving them.

Defendants point to the subpoena's October issuance. (Doc. 33 at 3.) Plaintiff began that process on August 27, 2026, by filing notice of his intent to serve the non-party subpoena, before Defendants McDowell and Simmons filed their motion to dismiss. (Ex. A.) Issuance was then held up by the *Radiola* plaintiff's motion to stay discovery, which was denied September 28, 2026. The subpoena was served October 6, 2026. A Rule 45 subpoena in that state case reaches only matters relevant to that case, which at that stage meant Plaintiff's counterclaims for breach of contract, nuisance, trespass, and fraud. It therefore sought the Association's own records about the Darrah Street fence and its dealings with the parties there, not the City's own records about its permits or enforcement history. The City communications in the production appear only because the Association was one side of them.

Defendants' delay argument also contradicts their own position. The City refused Plaintiff's records requests on the ground that he must use the rules of civil procedure instead. (FAC ¶ 30.) Then, on October 8, 2026, Defendants told this Court that Plaintiff was "free to seek discovery" about the fence in his pending case with his neighbor, the *Radiola* action. (Doc. 30, PageID.335.) By then Plaintiff had already issued and served his subpoena in that action. The City was not a party there; Plaintiff has used subpoena power wherever the rules made it available, and the Association's production is the result. Defendants cannot direct Plaintiff to that forum and then fault him for the time it took to use it.

## III. DEFENDANTS' FUTILITY ARGUMENT ANSWERS A CLAIM PLAINTIFF HAS NOT MADE

The Response treats every count as a claimed right to receive public records, and cites cases holding there is no such right. (Doc. 33 at 4–5.) Plaintiff's retaliation claim does not depend on any right to records. It alleges that the City took adverse action against him because he petitioned the government: his requests, beginning in 2024, that the City act on the Association's fence in the City right-of-way, and later his lawsuits. (FAC ¶¶ 18–19.) The proffered documents show City officials, in January 2025, meeting with the Association about Plaintiff's property and adopting a plan to issue him a stop order and a summons and to remove his permitted driveway apron. Such a claim "depends not on the denial of a constitutional right, but on the harassment [the plaintiff] received for exercising [his] rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1253 (11th Cir. 2005). It requires protected activity, retaliatory conduct that would deter a person of ordinary firmness, and a causal connection. *Id.* at 1250–51.

The authorities Defendants cite confirm the point. Apart from *Bennett*, which Defendants cite only for its point that a *de minimis* inconvenience is not actionable, each holds only that there is no constitutional right to receive public records, or that routine responses to records requests are not actionable. (Doc. 33 at 4–5.) None involves officials planning enforcement action against a citizen's property because of his petitioning, which is what the proffered documents show.

To be clear on timing, the City's involvement did not begin with Plaintiff's lawsuits. In October 2024 Plaintiff's dispute with the Association's president led to the Association's demand letter. (FAC ¶ 33.) That November 12, 2024 letter was courtesy-copied to Building Official Cortinas and Defendant Simmons, and the City placed it in its own permit file on December 2, 2024. (Doc. 31, Ex. 8.) On December 12, 2024, Baldwin County 911 wrote to Defendant Simmons that it had reopened Plaintiff's address after Simmons raised "an issue with Chet Ave" at a city addressing meeting. (FAC ¶ 34.)

The Response does not address that theory, the timing, or the documents supporting it. A futility argument that does not engage the claim actually proffered does not show that amendment would be futile.

The same is true of the comparator argument. As already alleged, the City's Building Official acknowledged in writing that the Association's fence sits in the City right-of-way with no record of a permit. (FAC ¶ 17; Doc. 15, Ex. A.) The proffered documents show the same officials, in January 2025, planning to jackhammer and gate Plaintiff's apron on the stated ground that he lacked a permit, although the City had issued him Permit No. ROW24-000140 six weeks earlier, while proposing no action on the fence. (Doc. 31, Exs. 2, 6, 9.) Plaintiff offers this contrast as evidence of motive and pretext, not as a separate constitutional injury.

**CONCLUSION**

Plaintiff respectfully requests that the Court grant leave to file the supplemental proffer and, if it dismisses any claim, do so without prejudice and with a deadline for a second amended complaint.

Respectfully submitted,

/s/ Scott Miller
Scott Miller, Pro Se
269 Falls Creek Street
Fairhope, AL 36532
(251) 402-6696
smiller@fluidmotionfab.com

Dated: November 3, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2026, I filed the foregoing with the Clerk of the Court, and that counsel of record for all Defendants will be served through the Court's CM/ECF system, including:

Emily B. Van Haneghan
Christopher S. Williams
Hand Arendall Harrison Sale LLC
Post Office Box 1499
Fairhope, Alabama 36533
evanhaneghan@handfirm.com / cwilliams@handfirm.com

/s/ Scott Miller
Scott Miller, Pro Se